state a claim upon which relief can be granted.

AND IT IS SO ORDERED.

**STATE OF WYOMING and George Christopolus, State Engineer for the State of Wyoming, Plaintiffs,**

v.

**Martin R. HOFFMAN, Secretary of the Army, et al., Defendants.**

**Civ. No. C76–95K.**

United States District Court,
D. Wyoming.

Nov. 4, 1976.

Steven L. Freudenthal and Marilyn S. Kite, Cheyenne, Wyo., for plaintiffs.

James P. Castberg, U. S. Atty., D. Wyo., Cheyenne, Wyo., for defendants.

*Memorandum Opinion*

KERR, District Judge.

At the threshold of this action the Court is confronted with a motion to dismiss. The motion brings in issue the "ripeness" and "standing" of the plaintiffs (State) in bringing this action. The State challenges the regulations promulgated by the Army Corps of Engineers and the Environmental Protection Agency pursuant to Section 404 of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1344.

The State seeks a writ in the nature of mandamus and declaratory relief holding the regulations illegal, arbitrary, in excess of authority and unconstitutional to the extent that they assert jurisdiction over waters not subject to the traditional navigational servitude.

This litigation essentially questions the legality of the jurisdictional breadth of the requirement for a Section 404 permit. Such a permit must be obtained from the Army Corps of Engineers prior to any dredge and fill activities on waters which the regulations construe as being navigable waters.

For the reason that the regulations are the final agency action, judicial review of the administrative actions is appropriate. The U.S. Supreme Court has held that final regulations have the force of law before as well as after sanctions are invoked. When conformity to such regulations causes injury cognizable by a court of equity, they are an appropriate subject to attack. *Columbia Broadcasting System v. United States,* 316 U.S. 407, at 418–419, 62 S.Ct. 1194, 86 L.Ed. 1563; *Abbott Laboratories v. Gardner,* 387 U.S. 136, at 149–150, 87 S.Ct. 1507, 18 L.Ed.2d 681. The determination which remains to be made is whether the State has suffered injuries sufficient to bring this action.

The State has filed the affidavits of four individuals setting forth the injuries which it claims result from the challenged regulations. The affidavits will be discussed individually.

The first affidavit is that of Robert L. Valeu, Assistant to the Manager, Wyoming Operations, Basin Electric Power Cooperative. The Cooperative proposes to construct a power station near Wheatland, Wyoming. In conjunction with this power station the Cooperative plans to construct the Grayrocks Reservoir and Dam. The Cooperative has applied for a 404 permit from the Corps of Engineers in order to construct this facility. If the permit is denied, the plans for the power station might be abandoned. There is no indication that this permit will be denied. The Cooperative, however, is not a party to this action. The State, how-

ever, claims it will be injured if the power station is not constructed due to loss of tax revenues.

According to the affidavit of Varleu, the total assessed value of Platte County, Wyoming, will increase from $28,138,038 in 1975 to approximately $166,932,400 in 1986. The total assessed value of School District No. 1, Platte County, Wyoming, will increase from $21,167,621 in 1975 to $153,329,600 in 1986. The total assessed value of School District No. 2, Platte County, Wyoming, will increase from $6,831,688 in 1975 to $13,602,-800 in 1986. The total assessed value of Wheatland will increase from $3,678,758 in 1975 to approximately $8,175,700 in 1986.

In addition, the materials used for the construction of the power station, which will be subject to the state use tax, will total approximately $485,126,200.

Based upon these estimates, James E. Petry, Director of Revenue for the Tax Commission of the State of Wyoming in his affidavit estimates that the construction of the power station will generate tax revenues for the State of Wyoming as follows:

A. An increase in taxes to the school districts and the town of Wheatland by the year of 1986 of $8,325,621.
B. Total use tax revenues accruing to Platte County between 1976 and 1983 of approximately $2,428,595.
C. Total use tax revenues paid to the State of Wyoming during the same period of approximately $12,126,491.

■ The question of ripeness for judicial review based upon the alleged injuries presented above must require that the Court determine "whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied." *Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, at 162, 87 S.Ct. 1520, at 1523, 18 L.Ed.2d 697. While the complaint presents a purely legal question as to the authority to issue the regulations as discussed above, no injury has occurred. The affidavits only support a problematic injury to the State of Wyoming. Injury will result only if the agency refuses at some future time to issue the 404 permit. No irremediable adverse consequences flow from requiring a later challenge if the permit should be denied. At this time the claim of damage to the State of Wyoming based upon possible loss of revenues is too speculative to justify judicial determination. Since the requisite ripeness is lacking, it is unnecessary to determine the issue of standing.

■ The affidavit of Larry J. Bourret, Commissioner of Agriculture for the State of Wyoming, is the basis for the second of Wyoming's claims of injury. Bourret states that *if* 404 permits are required for construction of diversion structures or headgates used in irrigation, the time required for processing these permit applications *might* delay irrigation of crops resulting in reduced yields. The affidavit does not identify any irrigation project where these problems are actually expected to occur. Here, as in the case of the power station, the injury to the State is speculative and is not sufficient to warrant judicial intervention.

■ The final affidavit upon which the State relies sustains both the requirements of ripeness and of standing. William G. Lucas, Superintendent and Chief Engineer of the Wyoming Highway Department states that the Wyoming Highway Department plans the construction of a large number of highway projects · which involve stream crossings or other dredge and fill work. The projects which he lists will require approximately twenty-four Section 404 permits. Lucas estimates that 200 man-days will be required over the next three years for preparation of the permit applications costing the Highway Department $15,000 to $18,000 per year in administrative expenses. He also estimates that the 60 day delay (according to the Corps of Engineers) in obtaining these permits would result in an interest expense on the projects of $450,000 at 6% annual interest rate to $750,000 at a 10% annual interest rate. Inflationary costs associated with a 60 day project delay at a 12% annual inflation rate would cost the State approximately $900,000 on the listed projects.

The increased cost of the Highway Department's projects due to the requirements of the challenged regulations are certain, not merely potential. The U.S. Supreme Court found that similar costs showed sufficient injury to justify bringing suit in *Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704. "Whether or not these cost estimates are exaggerated it is quite clear that if respondents, failing judicial review at this stage, elect to comply with the regulations and await ultimate judicial determination of the validity of them in subsequent litigation, the amount of preliminary paperwork . . . and recordkeeping will be substantial." *Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, at 173, 87 S.Ct. 1526, at 1529. The injuries to the State of Wyoming presented in the affidavit are sufficient to justify judicial intervention.

The question of standing now becomes an issue. "[W]hen a plaintiff's standing is brought into issue the relevant inquiry is whether . . . the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450, 1976.

The increased costs of highway construction due to the requirements of Section 404 permits is an actual injury which has been shown to exist. A determination that the regulations are invalid would obviate the necessity for these permits and thus remedy the injury.

In addition, prior to the adoption of the challenged regulations the individual states controlled dredge and fill activities in those waters which now require Section 404 permits but which were not subject to traditional navigational servitudes. The federal government, as a result of the regulations, now assumes this authority. If a final determination finds the regulations are invalid, the State would regain its authority to regulate these activities. The State thus has a stake in the outcome which can only be decided by a determination as sought in the complaint.

It therefore appears that the State in this action has the necessary standing and states a claim upon which relief can be granted. An order will be entered in conformity with this Memorandum Opinion.