**BHP PETROLEUM COMPANY, INC., a Delaware corporation, Appellant (Plaintiff),**

v.

**STATE of Wyoming, WYOMING TAX COMMISSION and its members, Shirley Wittler, Carrol Orrison and Thomas E. Trowbridge in their official capacities and the Department of Revenue and Taxation, State of Wyoming, Appellees (Defendants).**

No. 88–232.

Supreme Court of Wyoming.

Jan. 4, 1989.

W. Perry Dray of Dray, Madison & Thomson, P.C., Cheyenne, and John C. Siegesmund, III, of Parcel, Mauro, Hultin & Spaanstra, Denver, Colo., for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., Cheyenne, for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellant BHP Petroleum Company Inc. (BHP) filed an action for declaratory judgment seeking district court interpretation of statutes and regulations governing the assessment of severance taxes on oil and gas production. The district court denied declaratory relief finding that BHP had not presented issues ripe for judicial review. We reverse the district court's decision on ripeness and remand for a district court interpretation of the statutes and regulations challenged by BHP.

BHP has been the operator of a large federal oil and gas unit called the Madden Deep Unit (Unit) since 1982. The Unit includes leases in Fremont and Natrona Counties, Wyoming. BHP owns a small percentage of the oil and gas produced from the Unit, but manages the entire Unit for other parties owning interests in production derived from Unit leases. Its duties as Unit operator are set forth in written agreements with parties who own working interests in the leases.

Each working interest owner in the Unit has the right to take in kind, or separately dispose of, its share of production as it sees fit. Working interest owners therefore negotiate their own sales contracts with various purchasers. BHP acts as collection agent for some of the working interest owners on a number of these sales contracts. Under the Unit agreements BHP files a single comprehensive production report on all production from the Unit and makes severance tax payments on that production. Two scenarios develop from BHP's assumption of this duty: (1) when BHP is acting as collection agent for a working interest owner it computes the severance tax due based on the purchase contract information available to it and remits the tax to the state; (2) when BHP is not acting as collection agent, i.e., where the working interest owner receives direct payment for its share of production, BHP relies on information from the working interest owner to calculate the severance tax; it then remits the tax and invoices the working interest owner for that amount.

In the spring of 1988, appellee the State of Wyoming, Department of Revenue and Taxation (Department) began a comprehensive audit of severance taxes paid on the Unit. Preliminary findings from that audit revealed that some of the purchase contracts required the purchasers to reimburse the working interest owners for any severance taxes due on Unit production they purchased. Department auditors concluded that these reimbursements should have been included in the tax base. The results of the audit were officially released to BHP when, on April 26, 1988, Mr. Edward Dean, Department Senior Examiner, sent BHP a set of "Preliminary Findings" in which the Department concluded that

BHP was liable for severance tax deficiencies on past Unit production and that BHP would have thirty days to review the Department's decision. BHP also received an April 27, 1988, letter from Mr. James Petry, Department Director of Revenue, stating that the Department would rely on Department of Revenue and Taxation Rules of Practice and Procedure, Ch. IX, § 7, to hold BHP liable for the entire severance tax deficiency along with any penalty or interest. BHP then received additional time to respond to the Department's preliminary actions and, through counsel, questioned the preliminary report and argued that it should not be liable for the entire alleged deficiency because the Department lacked statutory authority to promulgate the rule requiring that result.

Communications between the Department and BHP did not resolve BHP's concerns and on June 14, 1988, BHP filed a complaint seeking declaratory judgment. The complaint requested a court order specifically finding that: the alleged deficiency could only be collected from the production itself or the owners of that production; BHP was not liable for the entire alleged deficiency; the Department lacked statutory authority to promulgate a rule holding BHP liable for the entire alleged deficiency; and that the rule relied on by the Department be declared invalid. The district court held a hearing on June 23, 1988, after which it ruled against BHP. In a June 29, 1988, decision letter, the district court identified the critical issues in the case as whether BHP, acting as Unit operator, was a person "holding the privilege of severing or extracting" production from the Unit under W.S. 39–6–302(a) and W.S. 39–6–304(h) (May 1985 Repl.); and, whether the language of W.S. 39–6–307(e) (May 1985 Repl.), stating that the severance tax "is a lien upon the interest of any owner *and the interest of any person extracting*" production from the Unit, applied to BHP as Unit operator. After identifying these issues, the district court concluded generally that initial determination of whether BHP was liable for the alleged deficiency under the severance tax statutes was committed to Department discretion and expertise. The district court also found that there were fact determinations underlying a resolution of the interpretation of these statutes; it did not elaborate on what those factual determinations might be. Based on these findings the district court denied relief finding that, based on the procedural and factual posture of the case, it was without authority to hear the declaratory judgment action.

On July 5, 1988, the Department filed a motion to dismiss BHP's complaint for failure to state a cause upon which relief could be granted. The district court granted the motion the same day. BHP filed a petition to certify to this court the questions of statutory interpretation identified in the district court's decision letter on July 19, 1988. Attached to the petition as "Exhibit A" was a June 30, 1988, notice of deficiency addressed to BHP ordering it to pay a deficiency, penalty, and interest of $1,807,447 within thirty days. Simultaneously, BHP filed its notice of appeal to the final order dismissing its complaint. This appeal followed.

BHP argues that the factual and legal posture of the case was such that the district court should have determined the statutory validity of the Department rule. Although BHP at one point argues that the district court's failure to reach the merits was based on the doctrine of exhaustion of administrative remedies, the substance of both parties' briefing amounts to an argument that the district court incorrectly applied the administrative law doctrine of ripeness.

 The doctrine of ripeness is a judicially created limitation of the availability of judicial review in administrative law cases.

[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 87 S.Ct. 1507, 1515, 18 L.Ed. 2d 681, 691–692 (1967). See also R. Pierce, S. Shapiro & P. Verkuil, Administrative Law and Process § 5.7.4 at 196–204 (1985). We evaluate ripeness in two prongs, which include, first, an evaluation of the fitness of the issues presented for judicial review and, second, an evaluation of the hardship to the parties if judicial review is denied. *Abbott,* 387 U.S. at 149, 87 S.Ct. at 1515, 18 L.Ed.2d at 691–692; and *State of Wyoming v. Hoffman,* 423 F.Supp. 450, 452 (D.Wyo. 1976).

 The first prong of the analysis is not an issue here and rebukes the Department's argument that a declaratory judgment action is not appropriate in this case. It is clear that a substantive administrative rule promulgated by the Department constitutes final agency action subject to review by the district court. W.S. 16–3–114(a) (Oct.1982 Repl.). Cf. *Abbott,* 387 U.S. at 149, 87 S.Ct. at 1516, 18 L.Ed.2d at 692; and *Hoffman,* 423 F.Supp. at 451. Declaratory judgment is a proper cause of action in which to assert that such a rule exceeds the Department's statutory authority. *State Board of Equalization v. Jackson Hole Ski Corporation,* 737 P.2d 350, 354 (Wyo.1987). See also W.R.A.P. 12.12. This type of review presents a question of law. See *Rocky Mountain Oil and Gas Association v. State,* 645 P.2d 1163, 1168–1169 (Wyo.1982).

The second prong of the analysis is dispositive. When the district court filed its decision letter on June 29, 1988, BHP was in receipt of preliminary notice of an alleged deficiency on severance taxes for past production from the Unit. BHP had also received a letter from the Department indicating that BHP would be held liable for the entire alleged deficiency along with any penalty and interest. Consequently, the record before the district court did contain evidence of agency action that could work an actual hardship on BHP. What the district court did not have in the record was a definitive assessment from the Department indicating that it had completed its audit on the Unit and was giving BHP a set time to remit payment. However, on June 30, 1988, the Department mailed such a notice of deficiency to BHP demanding payment of $1,807,447 in deficiency, penalty, and interest within thirty days.

We hold that sufficient evidence existed in the record at the time the district court issued its decision letter to show that actual hardship would befall BHP if judicial review was denied. This satisfies the second prong of the ripeness analysis. While a final assessment had not been issued when the decision letter was filed, it was clear at that time that the Department had decided to hold BHP liable for a large tax deficiency, penalties, and interest. This was confirmed when the Department sent BHP the assessment for $1,807,447 the day after the decision letter was filed. Cf. *Hoffman,* 423 F.Supp. at 452–453 (potential cost to the state in preparing applications for federal permits was sufficient to work a predictable or almost certain hardship indicating ripeness).

The district court erred when it refused to consider the merits of BHP's legal challenge to the statutory validity of the Department rule. We reverse the district court's order dismissing BHP's complaint and remand the declaratory judgment action for a district court interpretation of the Department's rule and pertinent severance tax statutes.