2011 WY 168

**Gloria Lynn LANDEROZ, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–11–0052.**

Supreme Court of Wyoming.

Dec. 28, 2011.

Representing Appellant: Diane Lozano, State Public Defender PDP; Tina N. Olson, Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Cathleen D. Parker, Senior Assistant Attorney General. Argument by Ms. Parker.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] A jury found Gloria Lynn Landeroz guilty of aggravated assault and battery. The jury found her not guilty of attempted first degree murder, not guilty of the lesser included offense of attempted second degree murder, and not guilty of conspiracy to commit first degree murder. The jury was unable to reach a verdict on the lesser included offense of attempted manslaughter. After the jury's verdict and the sentencing hearing, the State moved for dismissal of the attempted first degree murder charge without prejudice. The district court granted the motion.

[¶ 2] Ms. Landeroz appealed to this Court claiming the district court erred in dismissing the attempted first degree murder charge without prejudice because in doing so it exposed her to double jeopardy. She also asserts her due process rights were violated when the State failed to disclose that a key witness against her had an agreement with the State for favorable treatment in return for his testimony. We find no due process violation and affirm the judgment on the jury verdict. However, we remand for entry of an order clarifying that the dismissal of the attempted first degree murder charge is "with prejudice" as to that offense, but "without prejudice" as to the lesser included offense of attempted manslaughter.

## ISSUES

[¶ 3] We rephrase the issues Ms. Landeroz presents for this Court's determination as follows:

I. Whether the district court violated her constitutional right not to be twice placed in jeopardy for the same offense when it dismissed the first degree murder charge without prejudice after the jury acquitted her on that charge.

II. Whether the State violated her right to due process when it failed to disclose evidence that a key witness against her had an agreement with the State to testify in exchange for favorable treatment on the charges against him.

The State contends the district court properly dismissed the attempted first degree murder charge without prejudice after the jury was unable to reach a verdict on the lesser included offense of attempted voluntary manslaughter. The State also contends Ms. Landeroz's due process rights were not violated because she had an adequate opportunity to cross examine the witness in question.

## FACTS

[¶ 4] On May 17, 2009, at approximately 2:40 a.m., Rock Springs, Wyoming police officers received a report that gun shots had been fired at a trailer park in Rock Springs. Officer William Erspamer arrived at the location and noticed two trucks with broken glass and damaged paint parked in front of a trailer. Several people were standing on the porch of the trailer. The officer spoke to Jose Villegas, who said he had been awakened by the sound of breaking glass, looked outside his trailer and saw several people breaking the glass out of trucks parked outside. Mr. Villegas ran to the door and started to open it when the window in the door shattered. Outside he saw three men. They ran and he chased them. The men got into three vehicles that were parked down the street. Mr. Villegas turned to run back to the trailer court and the vehicles chased after him. He jumped behind a concrete block in order to avoid being hit by one of the vehicles, a white Lincoln Navigator. He saw the driver's face and heard him yell, "Let's get this m. .... f. ....!" Mr. Villegas saw the doors of the three vehicles open and he be-

gan to run again, as the men chased him on foot. He crossed the street to run to the trailer and saw that the white Lincoln Navigator had returned to the trailer park and was waiting for him. The white Lincoln Navigator accelerated and someone inside the vehicle fired a gun at him. He made it inside the trailer without being hit.

[¶ 5] Police officers spoke with others at the scene who generally confirmed Mr. Villegas's statements. Officer Erspamer found two empty .40 caliber Smith & Wesson pistol casings in the road approximately fifty feet from Mr. Villegas's home, two bullets in the west wall of the home and two 9mm bullets lodged in the living room furniture inside the home.

[¶ 6] Officer Steve Van Valkenburg was on duty that night and was advised to watch for the white Lincoln Navigator that had been involved in the shooting. He spotted the vehicle, ran a check on the registration and learned that it was registered to a Mr. Valdez. Officer Erspamer advised Officer Van Valkenburg that Valdez was the name of an individual believed to have been involved in the shooting and to stop the vehicle. Officer Van Valkenburg made the stop and ordered the occupants out of the vehicle. Joe Valdez was seated in the driver's seat, Ms. Landeroz was in the front passenger seat and Maximillian Furman was in the rear seat. They were taken to the Rock Springs police department for questioning. Detectives found a 9mm shell casing in Mr. Furman's pocket and a small metal pipe in Ms. Landeroz's purse which tested positive for marijuana residue. During questioning, Mr. Furman stated that as the white Lincoln Navigator approached the trailer the second time, Ms. Landeroz was hollering for them to shoot Mr. Villegas, grabbed the .40 caliber pistol, aimed it out the window and started shooting.

[¶ 7] Ms. Landeroz was charged with attempted first degree murder in violation of Wyo. Stat. Ann. § 6–1–301(a)(i) and § 6–2–101(a) (LexisNexis 2011), aggravated assault and battery in violation of § 6–2–502(a)(iii)

(LexisNexis 2011) and misdemeanor possession of marijuana in violation of § 35–7–1031(c)(i)(A) (LexisNexis 2009). The State later amended the information to charge Ms. Landeroz with the additional count of conspiracy to commit first degree murder in violation of § 6–1–303(a) (LexisNexis 2011).[1] Just before trial, the State orally moved to dismiss the misdemeanor possession charge, which motion the district court also granted. The case proceeded to trial on the attempted first degree murder, conspiracy to commit first degree murder and aggravated assault and battery charges.

[¶ 8] During the trial, defense counsel moved for a mistrial on the ground that the State had failed to disclose a proffer Mr. Furman had made in exchange for the State's agreement to take his cooperation into account in making any offer to settle the charges filed against him for his involvement in the shooting. The district court denied the motion and the trial continued. At the close of the evidence, defense counsel renewed the motion for mistrial and the district court again denied it.

[¶ 9] During the jury instruction conference, the State asked the district court to instruct the jury on the lesser included offenses to attempted first degree murder, i.e. attempted second degree murder and attempted manslaughter. The district court gave the requested instructions. After deliberating, the jury found Ms. Landeroz not guilty of attempted first degree murder, attempted second degree murder and conspiracy to commit first degree murder, did not reach a verdict on the attempted manslaughter charge and found her guilty of aggravated assault and battery.

[¶ 10] The district court convened a sentencing hearing at which time it sentenced Ms. Landeroz to serve eight and one-half to ten years incarceration. Three days later, the State moved for an order dismissing without prejudice the attempted first degree murder charge and the district court granted the motion. Several days later, the district court entered its judgment and sentence con-

---

1. The State also filed a second amended information charging Ms. Landeroz with conspiracy to commit property destruction in violation of § 6–

1–303(a) and § 6–3–201(a) (LexisNexis 2011). The district court dismissed this charge prior to trial at the State's request.

sistent with the jury verdict and the sentence imposed at the hearing. Ms. Landeroz timely appealed.

## STANDARD OF REVIEW

[¶ 11] Ms. Landeroz contends that her constitutional rights to due process and against being twice placed in jeopardy for the same offense were violated. We review alleged violations of constitutional rights *de novo*. *Meyers v. State*, 2005 WY 163, ¶ 8, 124 P.3d 710, 712 (Wyo.2005).

## DISCUSSION

### 1. Double Jeopardy

[¶ 12] Ms. Landeroz contends that by dismissing without prejudice the attempted first degree murder charge after the jury acquitted her on that charge the district court has exposed her to a second prosecution for the same offense in violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution. The State argues Ms. Landeroz's claim is not ripe for review because no charges have been refiled against her. Alternatively, the State contends the district court properly dismissed the attempted first degree murder charge in order to allow the State to recharge Ms. Landeroz with attempted manslaughter, the charge on which the jury became deadlocked.

[¶ 13] We begin by considering the State's claim that Ms. Landeroz's double jeopardy claim is not ripe for review. The ripeness doctrine is a category of justiciability "developed to identify appropriate occasions for judicial action." *Tarraferro v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 155, ¶ 8, 123 P.3d 912, 916 (Wyo.2005), quoting 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3529, p. 146 (1975). It is a judicially created limitation on the availability of judicial review in administrative law cases. *BHP Petroleum Co. v. State, Wyo. Tax Comm'n*, 766 P.2d 1162, 1164 (Wyo.1989).

> Its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Id.*, quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691–692 (1967).

[¶ 14] As this precedent demonstrates, the ripeness doctrine is generally applied in administrative cases. We have rarely applied the doctrine in a criminal case, and only in the context of challenges to parole board decisions. *Brenning v. State*, 870 P.2d 349, 352 (Wyo.1994); *Duffy v. State*, 789 P.2d 821, 833 (Wyo.1990). The doctrine is premised upon jurisprudential principles designed to promote judicial economy and the wise exercise of judicial power. *SNK v. State, Dep't of Family Servs.*, 2003 WY 141, ¶ 17, 78 P.3d 1032, 1037 (Wyo.2003). We evaluate ripeness in two prongs: first, we evaluate the fitness of the issues presented for judicial review and, second, we evaluate the hardship to the parties if judicial review is denied. *State ex rel. Arnold v. Ommen*, 2009 WY 24, ¶ 29, 201 P.3d 1127, 1135 (Wyo. 2009).

[¶ 15] In the present case, the State seeks to have us apply the doctrine to preclude consideration of Ms. Landeroz's claim that, in ordering the attempted first degree murder charge to be dismissed without prejudice, the district court has exposed her to re-prosecution on the charge in violation of the double jeopardy clause. The State premises its argument on the fact that the alleged double jeopardy violation will occur only if it re-files the charge, which it has not done. In that sense, the State contends, the issue is not ripe for this Court's review.

[¶ 16] Were we to accept the State's invitation to resolve this issue through application of the ripeness doctrine, the issue of whether Ms. Landeroz may be re-prosecuted and, if so, for what offense would remain unanswered. We conclude that clarifying the issue before any further proceedings are commenced is a wise exercise of our judicial power likely to promote judicial economy.

**[¶ 17]** The Fifth Amendment to the United States Constitution and Article 1, § 11 of the Wyoming Constitution guarantee that a person will not be placed twice in jeopardy for the same criminal offense. Although the two provisions contain different language, we have said "they have the same meaning and are co-extensive in application." *Tucker v. State,* 2010 WY 162, ¶ 41, 245 P.3d 301, 311 (Wyo.2010), quoting *Vigil v. State,* 563 P.2d 1344, 1350 (Wyo.1977). Just as the federal courts have said in applying the federal provision, we have said the double jeopardy provisions of both Constitutions provide an accused three protections: 1) protection against a second prosecution for the same offense following an acquittal; 2) protection against a second prosecution for the same offense after a conviction; and 3) protection against multiple punishments for the same offense. *Vigil,* 563 P.2d at 1350, citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In this case, Ms. Landeroz asserts the dismissal of the attempted first degree murder charge without prejudice falls under the first category because it allows the State to prosecute her again for the same offense following her acquittal on that charge.

**[¶ 18]** The law is clear that when a defendant has been acquitted on a charge, the "[Double Jeopardy] Clause guarantees that the State shall not be permitted to make repeated attempts to convict him." *Schiro v. Farley,* 510 U.S. 222, 230, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994), quoting *United States v. Wilson,* 420 U.S. 332, 339, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). The State may not reprosecute Ms. Landeroz for attempted first degree murder or attempted second degree murder. As to those charges, the district court's order of dismissal must be "with prejudice."

**[¶ 19]** The State requested and the district court properly gave instructions on attempted second degree murder and attempted manslaughter, the lesser included offenses of attempted first degree murder. *State v. Selig,* 635 P.2d 786, 793 (Wyo.1981), quoting *Brantley v. State,* 9 Wyo. 102, 61 P. 139, 139–140 (1900), "in charging an intent to commit murder in the first degree there is

necessarily included a charge of intent to commit murder in the second degree and voluntary manslaughter." The jury was unable to reach a verdict on the manslaughter charge. The law is clear that a retrial following a deadlocked jury does not violate the Double Jeopardy Clause. *Richardson v. United States,* 468 U.S. 317, 324, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984).

> [Without] exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.

*Id.,* quoting *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy. *Richardson,* 468 U.S. at 325, 104 S.Ct. 3081. The jury's failure to reach a verdict is not an event which terminates jeopardy. *Id.* Therefore, the State, if it chooses, may re-prosecute Ms. Landeroz on the attempted manslaughter charge. However, the district court's order of dismissal without prejudice refers to the attempted first degree murder charge and thereby creates some confusion. While we are confident the district court did not intend to suggest the State could recharge Ms. Landeroz with attempted first degree murder, an order clarifying that the dismissal without prejudice does not apply to that charge, which must be dismissed with prejudice, is appropriate.

### 2. *Due Process*

**[¶ 20]** In her second issue, Ms. Landeroz contends the State violated her right to due process when it failed to disclose prior to trial that Mr. Furman had made a proffer to and signed an agreement with the State in which he agreed to cooperate and it agreed to take his cooperation into account in reaching a settlement of the charges against him. The State responds that there was no due process denial because defense counsel received the evidence during trial and was

able to use it to cross-examine Mr. Furman and explain its significance to the jury during closing argument.

[¶ 21] Addressing the issue of undisclosed evidence in *Lawson v. State,* 2010 WY 145, ¶ 20–22, 242 P.3d 993, 1000–1001 (Wyo.2010) (some citations omitted), we said:

> "The right to a fair trial, guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment, imposes on States certain duties consistent with their sovereign obligation to ensure 'that justice shall be done' in all criminal prosecutions." *Cone v. Bell,* 456 [556] U.S. 449, 129 S.Ct. 1769, 1772, 173 L.Ed.2d 701 (2009), citing *United States v. Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The suppression by the prosecution of evidence favorable to a defendant and material to his guilt violates due process. *Hicks* [*v. State,* 2008 WY 83, ¶ 31, 187 P.3d 877, 883 (Wyo.2008) ], citing *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). This is true irrespective of whether the prosecution acted in good or bad faith in suppressing the evidence. *Chauncey v. State,* 2006 WY 18, ¶ 12, 127 P.3d 18, 21 (Wyo.2006), citing *United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). The rule exists to "ensure that a miscarriage of justice does not occur." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97.
>
> In order to establish a *Brady* violation, a defendant must demonstrate that the prosecution suppressed evidence, the evidence was favorable to the defendant, and the evidence was material. *Id.* Favorable evidence includes impeachment evidence. *Bagley,* 473 U.S. at 676, 105 S.Ct. at 3380; *Davis v. State,* 2002 WY 88, ¶ 18, 47 P.3d 981, 986 (Wyo.2002)…. *Brady* does not "automatically require a new trial whenever a combing of the prosecutor's files after the trial discloses evidence possibly useful to the defense but not likely to have changed the verdict." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). A finding that the undisclosed evidence is material is required. *Id.*
>
> Evidence is material under *Brady* only when a reasonable probability exists that the result of the proceeding would have been different had the evidence been disclosed. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *Thomas v. State,* 2006 WY 34, ¶ 15, 131 P.3d 348, 353 (Wyo.2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* When the defense makes a specific request and the prosecution fails to respond fully, the reviewing court may consider directly any adverse effect the failure to respond might have had on the preparation or presentation of the defendant's case. *Bagley,* 473 U.S. at 683, 105 S.Ct. at 3384. "The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response." *Id.* In judging materiality, the focus is on the cumulative effect of the withheld evidence, rather than on the impact of each piece of evidence in isolation.

[¶ 22] At trial in the present case, during the direct examination of Mr. Furman, the following exchange occurred:

Q. [By the prosecutor] [Mr. Furman], you are charged in this case, correct?

A. That is correct.

Q. What is your deal with the county attorney's office?

A. I have no deal.

Q. Are you hoping to improve your situation by testifying here today?

A. I would hope to, yes, but—

Q. Certainly would hope to, wouldn't you?

A. Yes, I would.

[¶ 23] During cross-examination, Mr. Furman again testified that he had no deal with the State, but that he did have a discussion with the prosecutor concerning the possibility of improving his situation. He denied having received a letter concerning immunity from prosecution. Defense counsel asked to approach the bench and moved for a mistrial

on the grounds that the prosecutor had not only withheld information but affirmatively acted to create a false impression that there were no assurances given to Mr. Furman in exchange for his testimony. During the ensuing discussion, the prosecutor stated that Mr. Furman had come in voluntarily within forty-eight hours after the shooting before he had legal representation and admitted to his involvement in the shooting. The prosecutor denied, however, that any "deal" was reached with Mr. Furman and implied that there was nothing in writing other than his own notes from meeting with Mr. Furman. The district court indicated that it could not grant the motion for mistrial solely on the basis of defense counsel's belief that there was an agreement; there must be evidence showing the existence of an agreement. However, the district court took the motion for mistrial under advisement over the noon recess.

[¶ 24] After the noon recess, defense counsel informed the court that he had just received a copy of a December 1, 2009, letter from the prosecuting attorney's office to Mr. Furman's attorney. The letter is on Sweetwater County & Prosecuting Attorney's Office letterhead and, although unsigned, the signature line states the name of the deputy county attorney who appeared at Ms. Landeroz's trial with the county attorney. The letter stated that Mr. Furman was interested in meeting with investigators for an "off the record" proffer and that the prosecuting attorney was interested in meeting with him and would consider any information Mr. Furman provided "in formulating a case disposition offer." The letter further stated the terms and conditions of the proffer, including that the State agreed to take into consideration the degree of Mr. Furman's cooperation and the nature and value of the information he provided in making any offer to settle the charges against him; the State would not make any plea offer unless it determined Mr. Furman had fully and truthfully disclosed all information in his possession concerning the shooting; and the State would not use the information Mr. Furman provided as a basis for filing new charges against him. The letter was signed by Mr. Furman and his attorney.

[¶ 25] Ms. Landeroz's counsel informed the court that he had not previously seen the letter and had no prior knowledge of its existence. He renewed his motion for a mistrial based on the prosecution's failure to disclose the letter in accordance with *Brady*. The district court denied the motion. Trial resumed and defense counsel continued his cross-examination of Mr. Furman aided by the letter which he had just received.

[¶ 26] On appeal, the State concedes that it had an interview and agreement with Mr. Furman. The State also concedes that it did not disclose the interview or the written agreement prior to trial but offers no explanation for why the letter was not disclosed. There is no question that the letter was impeachment evidence falling within *Brady*'s disclosure requirements and the State was required to disclose it. However, we have consistently held:

> The delayed disclosure of *Brady* materials is not always grounds for reversal. *Whitney* [*v. State*], 2004 WY 118, ¶ 58, 99 P.3d [457] at 476 [ (2004) ]. As long as disclosure is made before it is too late for the defendant to make use of the evidence, due process is satisfied. *Id. Brady* is not violated when the material is available to the defendant during trial. *Id.* The essence of *Brady* is the discovery of information after the trial, which was known to the prosecution but unknown to the defense during the trial. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Thus, where exculpatory evidence is discovered during the trial and defense counsel has the opportunity to use it in cross-examination, closing argument, or other parts of the defense case, courts generally do not find a due process violation.

*Thomas v. State*, 2006 WY 34, ¶ 16, 131 P.3d 348, 353 (Wyo.2006) (citations omitted).

[¶ 27] The letter setting forth the State's offer to Mr. Furman in exchange for his testimony was disclosed during Ms. Landeroz's trial and defense counsel had the opportunity to cross-examine Mr. Furman about it and to impeach his credibility in closing argument. Under these circumstances there was no *Brady* due process violation.

[¶ 28]   However, we cannot and do not condone the prosecutors' actions here. The county attorney and the deputy whose name appears under the signature line of the letter at issue tried this case.   Both were present in the courtroom during the lengthy discussion in which defense counsel argued that it was inconceivable that there was no agreement and the district court stated it had to have proof.   Neither disclosed the existence of the letter.   Instead, the county attorney implied there was nothing in writing other than his notes from the meeting with Mr. Furman.   Given these circumstances, we hereby refer this matter to the Wyoming State Bar for investigation by Bar Counsel.

### CONCLUSION

[¶ 29]   Ms. Landeroz has not met her burden of proving a *Brady* violation occurred depriving her of due process.   To the extent the district court's dismissal of the attempted first degree murder charge without prejudice suggests she can be re-prosecuted for attempted manslaughter, the order did not violate the double jeopardy clause.   To the extent the dismissal without prejudice suggests she can be re-prosecuted for attempted first or second degree murder, the order violated the double jeopardy clause.   We affirm the judgment on the jury verdict and remand for entry of an order consistent with this opinion.